# In the United States Court of Federal Claims

No. 10-226C

(Filed: November 10, 2010)

| | |
|---|---|
| **HENRY HOUSING LIMITED PARTNERSHIP,** | Dispute arising from the government's abrogation of the prepayment term of a loan contract between the Farmers Home Administration and the owner of a property restricted to rentals to elderly, handicapped, or low- and moderate-income tenants; pendency of both contractual and takings claims |
| **Plaintiff,** | |
| v. | |
| **UNITED STATES,** | |
| **Defendant.** | |

James T. Williams, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Greensboro, North Carolina, for plaintiff. With him on the briefs and at the hearing were William G. McNairy and Clinton R. Pinyan, Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Greensboro, North Carolina.

Shalom Brilliant, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Plaintiff, Henry Housing Limited Partnership ("Henry Housing"), is the owner of Martins Landing Apartments located in Martinsville, Virginia. In 1982, Henry Housing obtained a loan from the Farmers Home Administration ("FmHA"), United States Department of Agriculture, secured by that apartment property. In connection with the loan, Henry Housing promised to rent the property to individuals eligible for occupancy under Sections 515 and 521 of the Housing Act of 1949 ("Housing Act"), codified at 42 U.S.C. §§ 1485, 1490a.[1] Henry Housing

---

[1] Section 515 was added to the Housing Act by Pub. L. No. 87-723, § 4(b), 76 Stat. 670, 671, and Section 521 was added by Pub. L. No. 90-448, § 1001, 82 Stat. 476, 551. Section 1485 addresses loan assistance regarding housing in rural areas provided for elderly persons and families and persons with low income. *See* 42 U.S.C. § 1485. Section 1490a relates to loans to

also agreed to charge rents no higher than those permitted by FmHA, and to maintain certain cash reserves. Henry Housing's loan was to be amortized over a 50-year period. The loan could be repaid at any time. The rental restrictions would remain in place for twenty years or until repayment, whichever came later.[2]

Henry Housing claims the government has prevented it from repaying its loan, in violation of its contract. Henry Housing has sued the government for breach of contract and for contravening the prohibitions in the Fifth Amendment on taking property without just compensation.[3] After the government answered, it filed a motion for judgment on the pleadings under Rule 12(c) of the Rules of the Court of Federal Claims ("RCFC") as to the takings count, arguing that because Henry Housing was only allegedly harmed by the government's breach of contractual obligations, there can be no remedy granted to Henry Housing under its Fifth Amendment claim. *See* Def.'s Mot. for Judgment on the Pleadings ("Def.'s Mot.") at 4. Henry Housing resists the government's motion, averring that both of the alternative theories for recovery are potentially viable and should remain extant until final judgment is entered. *See* Pl.'s Opp'n to Mot. for Judgment on the Pleadings ("Pl.'s Opp'n") at 3-8.

## BACKGROUND[4]

Henry Housing entered its loan contract with the FmHA in 1982. Although Henry Housing's loan was amortized over fifty years, the promissory note gave it the right to repay the loan at any time. Compl. ¶ 12. If and when commercial financing on similar terms became available, FmHA could require Henry Housing to prepay the loan. Compl. ¶ 17. Regardless of

---

provide occupant-owned, rental, and cooperative housing, again in rural areas, for low- and moderate-income, elderly, or handicapped persons or families. *See* 42 U.S.C. § 1490a.

[2]*See* Pub. L. No. 96-153, § 503, 93 Stat. 1101, 1134 (1979) (amending Section 502 of the Housing Act to add a new Subsection (c), providing in part that "the Secretary may not accept an offer to prepay . . . unless the Secretary takes appropriate action which will obligate the borrower . . . to utilize the assisted housing . . . for the purposes specified in section 514 or 515 . . . for a period of . . . twenty years from the date on which the loan was made . . . or until the Secretary determines (prior to the end of such period) that there is no longer a need for such housing . . . to be so utilized."). That amendment to the Housing Act, codified as further amended at 42 U.S.C. § 1472(c), came into force before Henry Housing's loan was made by the FmHA.

[3] Similar suits have been filed by twelve other entities who own properties subject to loans made by FmHA, to which comparable rental restrictions apply. The government has filed motions for judgment on the pleadings regarding the takings counts in eleven of the twelve other cases.

[4]For the purpose of resolving this motion, the court presumes the allegations in Henry Housing's complaint to be true. Unless otherwise noted, the facts set out are undisputed. The recitation of facts is provided solely for purposes of providing a background for analysis of the pending motion and does not constitute findings of fact by the Court.

when Henry Housing repaid the loan, it was required to rent its property to people eligible for occupancy under FmHA regulations for twenty years. Compl. ¶¶ 18-19.

On October 28, 1992, Congress adopted the Housing and Community Development Act of 1992, Pub. L. No. 102-550, 106 Stat. 3672 ("the 1992 Act"). The 1992 Act imposed restrictions on loan repayment options. Compl. ¶¶ 21, 23. Under the 1992 Act and a related earlier statute, the Emergency Low Income Housing Prevention Act of 1987 ("ELIHPA"), Pub. L. 100-242, Tit. II, 101 Stat. 1815, 1877 (1988), a borrower such as Henry Housing could only repay its loan if certain conditions were satisfied. For example, before accepting a loan prepayment, the Secretary of Agriculture must have made reasonable efforts to convince the borrower to commit to extending the use of the FmHA properties for low-income individuals for a further twenty years from the date of a new agreement. Compl. ¶ 25. The FmHA also was authorized to offer various incentives to induce borrowers to agree to extend the low-income use of FmHA properties, including an increase in the rate of return on the investment, the reduction of the interest rate on the loan, and the offer of an additional loan to the borrower. Compl. ¶ 26.

If the Secretary determined after a reasonable period of time that an agreement would not be entered with a borrower to extend the use of the FmHA property as low-income housing, the Secretary was obligated to "require the borrower [with exceptions] to offer to sell the assisted housing and related facilities involved to any qualified nonprofit organization or public agency." 42 U.S.C. § 1472(c)(5)(A)(i); Compl. ¶ 30. Henry Housing contends that the forced-sale proceedings could only be avoided if (1) the FmHA property owner agreed to continue to operate its project as low-income housing for a period determined by the Secretary and then sell the property, or (2) the FmHA property owner agreed to lease the apartments to its existing low- and moderate-income tenants at reduced rental rates for the remainder of the tenants' lives or until the FmHA property owner arranged to move each tenant to other affordable housing. Compl. ¶ 33.

Henry Housing submitted an application to prepay its outstanding FmHA loan on April 16, 2004. Compl. ¶ 34. It alleges the government refused to accept prepayment and offered Henry Housing financial incentives not to prepay. Compl. ¶¶ 39-40. Henry Housing refused to accept the FmHA incentives or to obligate itself to extend its commitment to provide low income housing for another twenty years.

Henry Housing stated two claims against the government in this lawsuit. First, Henry Housing claimed the government "repudiated and breached [its] contract." Compl. ¶ 50. Second, Henry Housing alleged the government had effected a taking without just compensation. In its takings claim, Henry Housing specifically alleges that "[b]y requiring Plaintiff to house low-income tenants and to accept new low-income tenants, the [g]overnment has . . . conscripted Plaintiff's property for public use; . . . physically invaded or authorized others to invade Plaintiff's property; and  . . . deprived Plaintiff of its distinct investment-backed expectations with regard to its property." Compl. ¶ 52.

The government's motion for judgment on the pleadings as to Henry Housing's takings claim rests on the argument that "the remedy for the [g]overnment's refusal to accept prepayment of an FmHA loan and release the borrower from the loan program is an action for

3

breach of contract; a separate cause of action for a taking of property without just compensation is not available." Def.'s Mot. at 3.

## STANDARD FOR DECISION

RCFC 12(c) is identical to Fed. R. Civ. P. 12(c) and provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings may be granted when "there are no material facts in dispute and the [moving] party is entitled to judgment as a matter of law." *Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007) (citation omitted); *Zhang v. United States*, 89 Fed. Cl. 263, 267 (2009). "[A] motion for judgment on the pleadings should be granted only where it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim." *Owen v. United States*, 851 F.2d 1404, 1407 (Fed. Cir. 1988) (internal citation and quotation omitted); *see also Chang v. United States*, 859 F.2d 893, 894 (Fed. Cir. 1988) (same). Regardless of whether a "plaintiff is unlikely to prevail at trial, [a] court should only grant a defendant's motion for judgment on the pleadings if the defendant is clearly entitled to judgment on the basis of the facts as the plaintiff has presented them." *Owen*, 851 F.2d at 1407. The court must assume "each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant." *Id*.

When considering a Rule 12(c) motion, the court should apply substantially the same test as it does for a motion to dismiss for failure to state a claim under RCFC 12(b)(6). *See Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) ("A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss.") (citing *Curran v. Cousins*, 509 F.3d 36, 43-44 (1st Cir. 2007)); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) ("The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.") (citation omitted).

To state a claim, a "complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1376 (citing *Twombly*, 550 U.S. at 555). This criterion "does not require the plaintiff to set out in detail the facts upon which the claim is based," but the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1376 (citing *Twombly*, 550 U.S. at 570).

## ANALYSIS

The government seeks dismissal of Henry Housing's takings claim because any recovery by Henry Housing in the case is dependent on a finding by the court that the government abrogated or infringed Henry Housing's contractual right to repay its FmHA loan. Def.'s Mot. at 3. The government points out that any restrictions on Henry Housing's use of its property arise from the agreements in the contract with FmHA and that Henry Housing's right to terminate those restrictions has the form of a contract right. *Id*. The government contends that "[r]emedies for alleged infringement of any contractually-established rights generally lie in contract, not the Fifth Amendment." *Id*. at 4 (citing *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d

4

1060, 1070 (Fed. Cir. 2001); *Baggett Trans. Co. v. United States*, 969 F.2d 1028, 1034 (Fed. Cir. 1992)). The government goes further to assert that "[a]though rights existing independently of a contract are not necessarily restricted to contractual remedies, . . . such rights cannot give rise to a takings claim if the claim depends upon rights and obligations created by a contract with the [g]overnment." *Id*. at 4 (citing *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 656 (2003), *Integrated Logistics Support Sys. Int'l, Inc. v. United States*, 42 Fed. Cl. 30, 34-35 (1998)). Conceptually, the government extends this contention to embrace the general proposition that "compensation under the Takings [C]lause is a remedy for actions taken by the [g]overnment in its sovereign capacity, under its power of eminent domain, not actions taken by the [g]overnment in its proprietary capacity." *Id*. at 4 (citing *Sun Oil Co. v. United States*, 572 F.2d 786, 818, (Ct. Cl. 1978)).

The government's arguments reach too far. The distinction between the federal government's sovereign and proprietary acts is not necessarily meaningful in this context. Courts for some time have recognized that although legislating is a quintessentially sovereign act, targeted legislative actions can have a proprietary character. The Federal Circuit described this phenomenon in *Centex Corp. v. United States*, 395 F.3d 1283 (Fed. Cir. 2005), in interpreting and applying the Supreme Court's decision in *United States v. Winstar Corp.*, 518 U.S. 839 (1996). Drawing from the *Winstar* plurality and concurrence, the court of appeals in *Centex* concluded that legislation could not be regarded as a sovereign act when "it was not generally applicable legislation in form or substance, but was specifically targeted at appropriating the benefits of a government contract." 395 F.3d at 1308; *see also Winstar*, 518 U.S. at 898 & n.45 (Souter, J., plurality) (distinguishing between acts of general legislation and acts particularly directed at relieving the government of its contractual responsibilities); *id*. at 924 (Scalia, J., concurring) (describing cases where "Congress specifically set out to abrogate the *essential bargain*" of contracts in which the Supreme Court "declared such abrogation to amount to impermissible repudiation" as unprotected by the sovereign acts doctrine).

The 1992 Act and ELIHPA were plainly aimed at a specific set of government contracts and were not generally applicable legislation. Such targeted legislative action can give rise to government liability in the form either of breach of contract or of a taking. *See Mobil Oil Exploration and Producing Se., Inc. v. United States*, 530 U.S. 604, 619-20 (2000) (finding "the United States was communicating its intent to violate [particular] contracts" when it passed the Outer Banks Protection Act); *CCA Assocs. v. United States*, 91 Fed. Cl. 580, 598-99, 618-19 (2010) (finding a temporary taking and rejecting a contract claim due to applicable precedent concluding that privity of contract was absent, in a case concerning the effect of ELIHPA and the Low-Income Housing Preservation and Resident Homeownership Act of 1990 on a contract).

In short, while "[i]n general, takings claims do not arise under a government contract because . . . the government is acting in its proprietary rather than its sovereign capacity," *Stockton E. Water Dist. v. United States*, 583 F.3d 1344, 1368 (Fed. Cir. 2009) (quoting *St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008)) that differentiation does not materially advance the analysis of either a breach of contract or a takings claim. As a result, the distinction "cannot be understood as precluding a party from alleging in the same complaint two alternative theories for recovery against the government, for example, one for breach of contract and one for a taking." *Id*. at 1368.

5

Given this framework, the government's suggestion that a takings claim can never arise out of a contract is not correct. As the Supreme Court has held, "[r]ights against the United States arising out of a contract with it are protected by the Fifth Amendment." *Lynch v. United States*, 292 U.S. 571, 579 (1934). This is not to say that the court should reach to decide the takings claim in the first instance. As the Federal Circuit in *Stockton East Water District* observed, there are prudential reasons for deciding cases on non-constitutional bases:

> [W]hen a case arises in which both a contract and a taking cause of action are pled, the trial court may properly defer the taking issue, as it did here, in favor of first addressing the contract issue. It has long been the policy of the courts to decide cases on non-constitutional grounds when that is available, rather than reach out for the constitutional issue.

583 F.3d at 1368 (citing *Northwest Austin Mun. Util. Dist. No. One v. Holder*, __ U.S. __, __, 129 S.Ct. 2504, 2513 (2009)). In *Stockton East Water District*, the court of appeals also commented that, "of course[,] when a plaintiff is awarded recovery for the alleged wrong under one theory, there is no reason to address the other theories." *Id*. at 1368.

The court considered a similar issue in *Systems Fuels Inc. v. United States*, 65 Fed. Cl. 163 (2005). In *Systems Fuels*, the court held that a takings claim pled along with a contract claim should be preserved and not dismissed until an affirmative judgment is rendered on the contract claim:

> It is appropriate to proceed with both claims until the contract claim reaches fruition. Only after the contract claim has been fully litigated will it be possible to determine if the contract claim is viable. Some decisions of the court have dismissed takings claims once the government has been held liable for breach of contract prior to addressing damages under a contractual theory, while others preserve both claims until final judgment is rendered. *Compare Allegre Villa v. United States*, 60 Fed. Cl. 11, 19 (2004) (dismissing takings claims in the housing context on the grounds that plaintiffs were in privity of contract, in contrast to *Cienega Gardens* [*v.United States*, 331 F.3d 1319, 1345 (Fed. Cir. 2003)], where they were not, so contract claims were viable); and *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 656 n.8 (2003) (dismissing a takings claim in a [spent nuclear fuel] case after granting summary judgment on a partial-breach-of-contract claim), *with Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 501 (2005) (holding that the plaintiff had standing to pursue its takings claim while granting plaintiff's motion for partial summary judgment that the government was liable for partial breach of contract). Each of these decisions embraces the underlying principle that contract and takings claims may be pled and argued in the alternative, and that a viable breach-of-contract claim trumps a valid takings claim. Viewed at the end of the proceedings in a case, these decisions may have produced the same

results, but this court nonetheless holds that maintaining both claims is a more appropriate course prior to the time judgment is rendered on the contract claims.

65 Fed. Cl. at 172-73.

In light of *Lynch*, *Stockton East Water District*, and *Systems Fuels*, the court finds no merit in the government's argument that Henry Housing's takings claim is superfluous or superseded. Maintaining both contract and takings claims is the "more appropriate course prior to the time judgment is rendered." *Systems Fuels*, 65 Fed. Cl. at 173.

The government secondarily argues that any takings claim should be dismissed as time-barred because Henry Housing's complaint was not "filed within six years after [the takings claim] first accrue[d]." Def.'s Reply to Pl.'s Opp'n to Def.'s Mot for Judgment on the Pleadings at 3 (quoting 28 U.S.C. § 2501). This action was ostensibly filed within six years of FmHA's refusal to allow Henry Housing to prepay its loan. *See* Compl. ¶¶ 34-40. The government's answer contains no specific factual allegations that show or would tend to support the existence of a different, problematic accrual date, and no defense based on the statute of limitations is separately stated. Ans. ¶¶ 34-57; *see also* RCFC 8(c) (requiring a party responding to a pleading to state an affirmative defense of, among other things, statute of limitations). *But cf. John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 132-39 (2008) (applicability of the statute of limitations established by 28 U.S.C. § 2501 is jurisdictional and may be raised by the court *sua sponte* despite the government's waiver of the issue). No basis for application of the six-year statute of limitations set out in 28 U.S.C. § 2501 thus appears on the face of the pleadings. Accordingly, the court cannot dismiss Henry Housing's takings count on this secondary ground.

## CONCLUSION

For the reasons set out above, the government's Motion for Judgment on the Pleadings as to Count Two of Plaintiff's Complaint is DENIED.

It is so ORDERED.

s/ Charles F. Lettow  
Charles F. Lettow  
Judge