# In the United States Court of Federal Claims

Nos. 10-226C, 10-227C, 10-230C, and 10-232C

(Filed: June 4, 2015)

**HENRY HOUSING LIMITED PARTNERSHIP,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

Motion for approval of qualified settlement trust; trust corpus derived from recoveries in 56 individual but closely related cases alleging breach of contract and uncompensated taking

James T. Williams, Jr., Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Greensboro, North Carolina, for plaintiff. With him on the briefs and at the hearing were William G. McNairy and Clinton R. Pinyan, Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Greensboro, North Carolina. Also with him at the hearing was Sara Vizithum, Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Greensboro, North Carolina.

Jeffrey A. Regner, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Benjamin C. Mizer, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In these four consolidated cases, plaintiffs, Henry Housing Limited Partnership, Albermarle Housing Limited Partnership, Apex Housing Limited Partnership, and Hartsville Housing Associates, for themselves and on behalf of 52 other similarly situated plaintiffs, seek approval of the Weaver Rural Housing Qualified Settlement Trust (the "Weaver Trust" or "Trust") to administer any settlement proceeds as a qualified settlement fund under 26 U.S.C. ("I.R.C.") § 468B. Mot. for Approval of Qualified Settlement Fund Pursuant to 26 U.S.C. § 468B ("Pls.' Mot."), ECF No. 60. The government responds that it does not object to the establishment of the Trust but takes no position regarding its particular terms. Def.'s Resp. to Pls.' Mot. for Approval of Qualified Settlement Trust Fund ("Def.'s Resp."), ECF No. 62.

## BACKGROUND

Plaintiffs in this case and the related cases are limited partnerships organized under North Carolina law that share the same general partners, Weaver Investment Company and H. Michael Weaver. *See* Pls.' Mot. at 1, Ex. A (listing plaintiffs and docket numbers).[1] Plaintiffs are engaged in building and operating rural housing projects associated with the federal Rural Development Program and have filed actions against the government in this court for breach of contract and contravention of the Fifth Amendment's prohibition on taking property without just

[1]Arranged in order of docket numbers, the 56 plaintiffs are: Henry Housing Limited Partnership, No. 10-226, Albermarle Housing Limited Partnership, No. 10-227, Jordan Road Apartments, No. 10-228, Rockingham Housing Limited Partnership, No. 10-229, Apex Housing Limited Partnership, No. 10-230, South Lenoir Housing Limited Partnership, No. 10-231, Hartsville Housing Associates, No. 10-232, Greeneville Housing Limited Partnership, No. 10-233, Murray Hill Housing Limited Partnership, No. 10-234, Lincolnton Housing Limited Partnership, No. 10-235, Morganton Housing Limited Partnership, No. 10-236, Newport Housing Limited Partnership, No. 10-237, Elkin Housing Limited Partnership, No. 10-238, Christiansburg Housing Limited Partnership, No. 11-471, Palmetto Housing Associates, a limited partnership, No. 11-472, Buckhannon Housing Limited Partnership, No. 11-473, Liberty Housing Associates, a limited partnership, No. 11-474, Alexander Housing Limited Partnership, No. 11-812, Bakersville Housing Limited Partnership, No. 11-813, Battleboro Housing Limited Partnership, No. 11-814, Biscoe Housing Limited Partnership, No. 11-815, Burke Housing Limited Partnership, No. 11-816, Burnsville Housing Limited Partnership, No. 11-817, Churchwood Housing Associates, a limited partnership, No. 11-818, Coastal Housing Associates, a limited partnership, No. 11-819, Conway Housing Associates I, a limited partnership, No. 11-820, Duncan Housing Associates, a limited partnership, No. 11-821, East Christiansburg Housing Limited Partnership, No. 11-822, East Hartsville Housing Associates, a limited partnership, No. 11-823, Edenton Housing Associates, a limited partnership, No. 11-824, Fountain Inn Housing Associates, a limited partnership, No. 11-825, Granville Housing Limited Partnership, No. 11-826, Hudson Housing Limited Partnership, No. 11-827, Jonesboro Housing Limited Partnership, No. 11-828, Jonesville Housing Limited Partnership, No. 11-829, Kernersville Housing Limited Partnership, No. 11-830, Marion Housing Associates, a limited partnership, No. 11-831, Mullins Housing Associates, a limited partnership, No. 11-832, North Lenoir Housing Limited Partnership, No. 11-833, Princeton Housing Partnership, No. 11-834, Randolph Housing Limited Partnership, No. 11-835, Robbins Housing Limited Partnership, No. 11-836, Rutherford College Housing Limited Partnership, No. 11-837, Seneca Housing Associates, a limited partnership, No. 11-838, South Conway Housing Associates, a limited partnership, No. 11-839, Surry Housing Limited Partnership, No. 11-840, Tarboro Housing Limited Partnership, No. 11-841, Timberlane Housing Limited Partnership, No. 11-842, Tremont Housing Associates, a limited partnership, No. 11-843, Uwharrie Housing Limited Partnership, No. 11-844, Washington Housing Limited Partnership, No. 11-845, West Jefferson Housing Limited Partnership, No. 11-846, West Randleman Housing Limited Partnership, No. 11-847, West Sanford Housing Limited Partnership, No. 11-848, Windsor Arms Housing Limited Partnership, No. 11-849, and Wytheville Housing Limited Partnership, No. 11-850. *See* Pls.' Mot. Ex. A.

compensation, based upon the government's alleged repudiation of contract prepayment rights in connection with that Program. *Id*. at 1-2; *see generally Henry Housing Ltd. P'ship v. United States*, 95 Fed. Cl. 250 (2010). Although plaintiffs' individual cases differ in the particular factual circumstances attendant to each property, they involve many common factual and legal issues and are very closely related. Pls.' Mot. at 1-2. Accordingly, all 56 cases were assigned to a single judge. The cases initially proceeded separately, but in consort with one another. Then, after consulting with the parties, the court selected four of the cases to serve as bellwether actions that might represent most of the factual variations within the larger group, and which when resolved might provide a template for disposition of all the cases. *See* Consolidation and Scheduling Order, No. 10-226C (Mar. 27, 2012), ECF No. 33. Following discovery and an alternative dispute resolution proceeding before Judge Horn, those four cases are nearing settlement. *See* Hr'g Tr. 4:11 to 5:9 (Apr. 23, 2015).[2]

In anticipation of complications arising from variations in the timing and amount of settlements for each of their individual claims, on March 26, 2015, plaintiffs created the Weaver Trust, drafted to become effective upon the court's entry of an order approving the Trust and retaining jurisdiction over it. Pls.' Mot. at 2-3. An agreement (the "Trust Agreement") was executed on March 26, 2015 to govern the Trust. *See* Notice of Filing under Seal, Weaver Rural Housing Qualified Settlement Trust ("Weaver Trust"), No. 10-226C (Apr. 30, 2015), ECF No. 70. Upon approval of the Weaver Trust, plaintiffs' rights to recoveries in their individual cases will transfer to the Trust, be accumulated as each of the individual cases is resolved and the recovery proceeds paid, and ultimately be distributed in accord with the Trust Agreement following the resolution of the claims in all of the individual cases. Pls.' Mot. at 2-3; Weaver Trust at 1 (stating that "all of the [p]artnerships want the establishment of this trust to receive the proceeds from the [l]itigation and provide a mechanism for allocating the expenses related to the [l]itigation and, accordingly each [p]artnership has or will assign their rights to the [l]itigation [p]roceeds . . . to this [T]rust"). "Plaintiffs have collectively agreed to share expenses with respect to [their] claims," specifying that "[t]he allocation of those expenses will be affected by the amount of recovery made by each . . . [p]laintiff." Pls.' Mot. at 2. Plaintiffs have retained an independent trustee to administer the Trust, pay expenses, and approve and administer payment to each individual plaintiff. *Id.* at 2-3; *see also* Weaver Trust at 1.[3]

Acknowledging that "properly and completely allocating expenses will be impossible until all [of their] claims are resolved," Pls.' Mot. at 2, plaintiffs request that the Weaver Trust be administered as a qualified settlement fund under I.R.C. § 468B, *id*. at 3. Specifically, plaintiffs represent that "[o]therwise, recoveries that were paid into the Trust might be treated as received by [an individual] [p]laintiff in the year of payment for tax purposes, even though the Trustee will not make a payment to any . . . [p]laintiff until all . . . [c]laims have been resolved and expenses allocated, which will likely be in a subsequent tax year." *Id.*; *see also* Hr'g Tr. 8:12 to 9:9.

[2]Further citations to the transcript of the hearing held on April 23, 2015 will omit reference to the date.

[3]The designated trustee will also serve as trust administrator as defined in 26 C.F.R. ("Treas. Reg.") § 1.468B-2(k)(3). *See* Pls.' Mot. at 4.

On April 23, 2015, a hearing was held to address the details of the Trust. Subsequently, pursuant to the court's request, plaintiffs submitted a copy of the Weaver Trust under seal to the court on April 30, 2015.

**STANDARD FOR DECISION**

Qualified settlement funds are primarily established to collect assets accumulated from settlements of claims resulting from an event or related events and to make distributions to appropriate parties. *See* Notice of Filing Ex. A (Robert W. Wood, *U.S. Income Portfolios: Other Pass-through Entities Portfolios 738-1st: Qualified Settlement Funds and Section 468B* § I, at 1 (Bloomberg BNA 2015), ECF No. 69. Treasury Regulation § 1.468B-1 defines a qualified settlement fund as "a fund, account, or trust" that satisfies the following requirements:

(1) It is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;

(2) It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event (*or related series of events*) that has occurred and that has given rise to at least one claim asserting liability—

. . .

(ii) Arising out of a tort, *breach of contract*, or *violation of law* . . . ; and

(3) The fund, account, or trust is a *trust under applicable state law*, or its assets are otherwise segregated from other assets of the transferor (and related persons).

Treas. Reg. § 1.468B-1 (emphasis added).[4]

---

[4]Subsection 468B(g) of the Internal Revenue Code, titled "Special rules for designated settlement funds," serves as the source of authority for the Department of the Treasury to issue Treas. Reg. § 1.468B-1. *See* 26 U.S.C. § 468B(g). Section 468B generally outlines requirements for designated settlement funds ("DSF"), which are distinct from qualified settlement funds. Paragraph 468B(g)(1) provides, in relevant part:

> Except as provided in paragraph (2) [listing settlement funds entitled to exemptions from tax], nothing in any provision of law shall be construed as providing that an escrow account, settlement fund, or similar fund is not subject to current income tax. *The Secretary shall prescribe regulations providing for the taxation of any such account or fund whether as a grantor trust or otherwise.*

I.R.C. § 468B(g)(1) (emphasis added).

In *United States v. Brown*, 348 F.3d 1200, 1216 (10th Cir. 2003), the Tenth Circuit addressed whether I.R.C. § 468B(g) was an unconstitutional delegation of legislative power and, alternatively, whether the Secretary of the Treasury in promulgating Treas. Reg. § 1.468B-1 exceeded the scope of authority granted under I.R.C. § 468B(g). The court concluded that there

**ANALYSIS**

A. *Qualifications of the Weaver Trust*

The Trust would receive the settlement proceeds from the "action[s] . . . against the [g]overnment seeking compensation for the [g]overnment's alleged repudiation of the contract prepayment rights held by the [p]artnerships." Weaver Trust at 1 (noting that each relevant partnership "has potential claims (for alleged breach of contract, just compensation under the Fifth Amendment for an alleged taking of private property, or both) against the United States of America . . . for compensation for damages it has suffered under the Rural Development [P]rogram as a result of restrictions on its ability to prepay its loans"). All 56 cases are currently pending in this court. They involve the same type of contract with the same party, *i.e.*, the United States. The plaintiffs are also limited partnerships controlled by the same general partners. Common factual and legal questions also are apparent. In each of these cases, plaintiffs are represented by the same counsel. *See* Notice of Directly Related Cases, ECF No. 26.

The chief question respecting approval under Treas. Reg. §1.468B-1(c)(2) is whether the Weaver Trust has been established to "resolve or satisfy one or more contested or uncontested claims that have resulted or may result from . . . a related series of events . . . that has occurred" and has given rise to claims for "breach of contract" and for a "violation of law." Treas. Reg. § 1.468B-1(c)(2). The contracts at issue are so-called "Post-1979 FmHA Contracts," and the loans attendant to those contracts are "Post-1979 FmHA Loans," entered between each of the partnerships and the Farmers Home Administration, now succeeded by Rural Housing and Community Development Services, in the Department of Agriculture. The documentation for the contracts and loans was on standard FmHA forms, adapted for each particular subsidized rural housing project. And, the legislation abrogating the plaintiffs' right to prepay applied to all like contracts and loans. Despite those close parallels in the claims, each of the plaintiffs had a separate contract and attendant loan. Thus, different transactions were involved for the individual plaintiffs, such that joinder under Rule 20(a) of the Rules of the Court of Federal Claims ("RCFC") would not have been appropriate. *See, e.g., Franconia Assocs. v. United*

---

was no unconstitutional delegation because "Congress (1) expressed its general policy to permit taxation of settlement funds not then taxed under the DSF regulations, (2) expressly directed the Secretary of the Treasury to promulgate regulations, and (3) limited the exercise of the Secretary's authority to 'escrow account[s], settlement fund[s], . . . [and] similar fund[s]." *Id*. at 1217 (alteration in original) (quoting I.R.C. § 468B(g)). The court reasoned that the scope of authority granted by the statute was broad and "leaves it open to the Secretary of the Treasury to determine the proper taxation of settlement funds and the like," and therefore it concluded that "[Qualified Settlement Fund] regulations are within [that] delegation." *Id*.; *see also* Treas. Reg. § 1.468B-1(*l*), Example 6 (noting that "[a]lthough the fund [in the example] does not qualify as a designated settlement fund, it is a qualified settlement fund because the fund meets the requirements of paragraph (c) of this section").

*States*, 61 Fed. Cl. 335, 337 (2004) (holding that plaintiffs, each of whom had entered into an agreement for a low interest loan from FmHA, had claims with many common legal or factual questions, but that was not enough to support permissive joinder under RCFC 20(a)). Do the plaintiffs nonetheless have sufficient commonality that their claims can be said "to result from . . . [a] related series of events," Treas. Reg. § 1.468B-1(c)(2), enabling the proceeds of future settlements to be grouped together in one settlement fund? In a sense, the assembled judges of the court have already answered this question in the affirmative by approving the assignment of the group of cases to a single judge for resolution. This result, guided by practical considerations, is now supported by the parties' representations that future settlements can be effectively and efficiently managed through a qualified settlement fund. Although Treas. Reg. §1.468B-1 lists examples illustrating various applications of the regulation, and none of these examples are directly pertinent to the circumstances at hand, the court concludes that the claims are so closely related that the criteria of Treas. Reg. §1.468B-1(c)(2) have been satisfied.[5]

Insofar as the other requirements of Treas. Reg. 1.468B-1(c) are concerned, the Trust is established under North Carolina law, *see* Hr'g Tr. 15:25 to 16:4, and thus it comports with Treas. Reg. 1.468B-1(c)(3). Moreover, the requirements outlined in §1.468B-1(c)(1) will be met upon the issuance of this order, approving the Trust as a qualified settlement fund and maintaining continuing jurisdiction over the Trust. *See* Weaver Trust at 1 (noting that "the effectiveness of this declaration of trust is conditioned upon the issuance of an [o]rder by the United States Court of Federal Claims . . . approving this Trust and retaining jurisdiction over this Trust"). Accordingly, the Weaver Trust constitutes a qualified settlement fund under Treas. Reg. § 1.468B-1, and it may be approved by the court.[6]

---

[5]Technically, the claims "aris[e] out of [more than] *a* . . . breach of contract," Treas. Reg. § 1.468B-1(c)(2)(ii) (emphasis added). The indefinite article "a" usually refers to a singular noun. The usage in the Treasury Regulation of the indefinite article, nevertheless, can be pertinent to more than one noun or object insofar as a common characteristic is involved, *e.g.*, swords of a length, women of a height, etc. That application appears to fit the circumstances here.

[6]Judges of this court have allowed plaintiffs to establish qualified settlement trusts funded by awards in collective actions filed under the Federal Labor Standards Act for overtime wages. *See, e.g.*, Order of July 11, 2014, *Federal Air Marshals 5001 to 5093 v. United States*, No. 11-613C, ECF No. 65 (Wheeler, J.); Judgment and Order of Sept. 22, 2010, *Christofferson v. United States*, No. 01-495C, ECF No. 360 (Bruggink, J.). Those orders addressed statutorily authorized collective actions where joinder was not at issue, *see* 29 U.S.C. § 216(b), and thus they did not require the court to address a situation such as this one where the trust corpus would be derived from actions respecting which joinder of separately brought claims was not possible under RCFC 20(a) because the actions, while closely related, did not arise out of the same transaction or occurrence.

B. *Administration of the Trust*

The court approves the Weaver Trust as a qualified settlement fund and agrees to retain jurisdiction over the Trust for the duration of its existence. The designated trustee shall file annual financial reports informing the court of the status of the Trust. In addition, the trustee must provide the court with any request for appointment of a successor trustee, notice of any litigation or other contested proceeding involving the Trust, including those related to taxation, and a petition for termination of the Trust.

## CONCLUSION

For the reasons stated, plaintiffs' Motion for Approval of Qualified Settlement Fund Pursuant to Section 468B of the Internal Revenue Code is GRANTED. The Weaver Rural Housing Qualified Settlement Trust is approved, and the court retains jurisdiction over the Trust for the duration of its existence. The first annual financial reports shall be provided to the court on May 15, 2016, and shall be due on May 15th of every year thereafter until termination of the Trust.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge